# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| WELLS FARGO BANK, N.A., as Securities Intermediary,<br><br>Plaintiff,<br><br>v.<br><br>AMERITAS LIFE INSURANCE CORP.,<br><br>Defendant. | No. 4:21-cv-03118-JMG-CRZ |

### DEFENDANT AMERITAS LIFE INSURANCE CORPORATION'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS <u>PLAINTIFF'S PROMISSORY ESTOPPEL CLAIM</u>

**I.  INTRODUCTION**

This case involves a $4 million life insurance policy issued in New Jersey by Union Central Life Insurance Company, a predecessor of Ameritas Life Insurance Corporation (collectively, "Ameritas"), on the life of Jerry Freid (the "Policy"), a New Jersey resident. Unknown to Ameritas, the Policy was manufactured as part of a stranger-originated life insurance ("STOLI") scheme: investors used Mr. Freid as an instrument to procure the Policy and place a wager on his life.

Life insurance policies taken out for the purpose of wagering on human lives are illegal and void *ab initio*. Ameritas originally commenced litigation in New Jersey, seeking a declaration that the Policy was illegally procured and void *ab initio*. The New Jersey Action has been stayed pending the resolution of this case, but the questions of law in both are identical. In the instant matter, Wells Fargo Bank, N.A., as Securities Intermediary ("Wells Fargo") seeks to enforce the Policy through its breach of contract, bad faith, and promissory estoppel claims, and in the alternative, asserts a claim for unjust enrichment to recover its premiums. Discovery will establish

that each of Wells Fargo's claims fail because the Policy is void *ab initio* for lack of insurable interest, but Wells Fargo's promissory estoppel claim fails right out of the gate as a matter of law.

As this Court has already noted, Wells Fargo brought this action in Nebraska despite the fact that it has no contact with the State and that Nebraska is, in fact, the home of Ameritas. Make no mistake, Wells Fargo filed in Nebraska to try to seek shelter from New Jersey courts and New Jersey law. But Wells Fargo's pivot to this Court cannot escape reality—this is a New Jersey policy, applied for and issued to a New Jersey trust, insuring the life of a New Jersey resident. New Jersey law governs the claims here, regardless of the forum. And a sea of New Jersey law unambiguously prohibits courts from enforcing illegal contracts and promises that violate public policy. Indeed, the New Jersey Supreme Court has specifically held that these STOLI agreements, and promises made thereunder, never came into existence and therefore cannot be enforced through equitable doctrines like estoppel. At bottom, Wells Fargo's promissory estoppel claim is nothing more than a backdoor attempt to enforce a contract under the terms of the Policy and recover the full death benefit—even if the Policy is deemed to be void *ab initio* for lack of insurable interest—which courts around the country have unanimously prohibited. For this reason, and those that follow, this Court should dismiss Wells Fargo's promissory estoppel claim as a matter of law.

## II. STATEMENT OF FACTS[1]

On December 18, 2007, the Jerry Fried Irrevocable Trust (the "Trust") was created. Compl. ¶ 11. The Trust is governed by New Jersey law and its situs is in Iselin, New Jersey.[2] On August

---

[1] This Statement of Facts draws from the allegations set forth in Wells Fargo's Complaint because the Court must accept as true well-pleaded facts for the purposes of this motion. Ameritas does not concede the veracity of any of these "facts," or any of the facts alleged by Wells Fargo in its Complaint for that matter.

[2] Jerry Freid Irrevocable Trust (Dec. 18, 2007), Doc. No. 31-4, p.70-73; *see also* New Jersey Action (2:21-cv-02136-CCC-AME), Doc. No. 8-7, p.132-144. Wells Fargo explicitly cites and relies on the creation of the Trust and the issuance of the Policy to the Trust in pleading its claims (Compl. ¶¶ 11-12), therefore, these documents are properly considered on a motion to dismiss. *Gorog v. Best Buy Co.*, 760 F.3d 787, 791

2

14, 2008, that New Jersey Trust submitted an insurance application on New Jersey forms to Ameritas for a $4 million policy insuring the life of a New Jersey resident named Jerry Freid.[3] The application listed the Trust's New Jersey address, and the insured, the insurance broker, and the trustee all signed the application in New Jersey.[4] In September 2008, in reliance upon the New Jersey application, Union Central issued the Policy insuring the life of a New Jersey resident for delivery to the New Jersey Trust at its New Jersey address.[5]

In May 2011, shortly after the Policy's contestability period, the Policy was sold to an undisclosed investor. Compl. ¶ 13. Wells Fargo acted as the Securities Intermediary. *Id.* In 2012, James Kevin Kegril and others were indicted for conspiracy to commit fraud against insurance companies, including Ameritas, for misrepresenting certain information on insurance applications. *Id.* ¶¶ 16-20. In 2014, Ameritas sought to recover commissions that it had paid to Mr. Kegril when it issued the Policy. *Id.* ¶¶ 16-20. Throughout the term of the Policy, Ameritas accepted premium payments and sent routine policy correspondence to Wells Fargo as owner. *Id.* ¶ 22.

On July 29, 2020, Mr. Freid passed away. *Id.* ¶ 24. In August 2020, Magna Servicing submitted a death claim to Ameritas on behalf of Wells Fargo's then-undisclosed investor-principal. *Id.* ¶ 25. After conducting a claim investigation, Ameritas concluded that the Policy had

---

(8th Cir. 2014) ("Rule 12(b)(6) motions are not automatically converted into motions for summary judgment simply because one party submits additional matters in support of or in opposition to the motion. . . . Though matters outside the pleading may not be considered in deciding a Rule 12 motion to dismiss, documents necessarily embraced by the complaint are not matters outside the pleading.") (cleaned up); *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017) (acknowledging that, at a motion to dismiss stage, courts can consider "documents necessarily embraced by the complaint," including "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleadings").

[3] Union Central Policy Applic. (Aug. 14, 2008), Doc. No. 31-4, at 192-201.

[4] *Id.*

[5] Union Central Life Insurance Policy (Sept. 8, 2008), Doc. No. 31-4, at 172-191; Delivery Receipt to Trust (Sept. 10, 2008), Doc. No. 31-4, at 57.

been illegally procured by strangers and filed the New Jersey Action on February 9, 2021, seeking a judgment declaring the Policy void *ab initio* for lack of insurable interest. *Id.* ¶ 27. On June 14, 2021, Wells Fargo filed this mirror-image case here, seeking to enforce the Policy and recover the full amount of its death benefits under theories of breach of contract, bad faith, and promissory estoppel (Counts I-III). Wells Fargo also asserted, in the alternative, an unjust enrichment claim to recover its premiums, in the event the Policy is declared void *ab initio* (Count IV). *Id.* ¶¶ 40-74.

Although styled as a separate and independent claim, Wells Fargo's promissory estoppel claim does nothing more than attempt to enforce the Policy and receive the full amount of the death benefit thereunder—in the event that the Policy is deemed void *ab initio* for lack of insurable interest. Compl. ¶¶ 60-69. Specifically, Wells Fargo admits that the alleged "promise" it is trying to enforce through estoppel was that the Policy was "valid and enforceable . . . for which the death benefit would be duly paid." ¶ 64. And the damages Wells Fargo seeks through its promissory estoppel claim are "$4 million, representing the principal amount of the Policy's death benefit." *Id.* ¶ 69. Wells Fargo does not allege that it relied upon any other "promises," nor does it claim damages other than the death benefit that it expected to receive under the Policy. *Id.* ¶¶ 60-69. That is, Wells Fargo's alternatively-pled promissory estoppel claim seeks to enforce the Policy *even if* the Policy is deemed to be unenforceable. As this motion explains, this is not a viable claim.

### III. STANDARD

A court should dismiss all or part of a claim if it determines that it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). "Legally insufficient conjecture and 'labels and conclusions,' do not suffice to state a claim." *Yang Mee Thao-Xiong v. Am. Mortg. Corp.*, 575 F. App'x 691, 692 (8th Cir. 2014). The Eighth Circuit has long recognized that courts should dismiss duplicative claims to "comport[] with our long-standing 'general principle' of

4

'avoiding duplicative litigation.'" *Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 932 (8th Cir. 2011) (citing *Brewer v. Swinson*, 837 F.2d 802, 804 (8th Cir. 1988)).

IV. **ARGUMENT**

Wells Fargo is seeking to enforce the terms of a New Jersey policy, and its claims will be governed by New Jersey law. The Policy's application was executed on New Jersey forms, by a New Jersey trust and a New Jersey trustee, and the Policy that was applied for by, and issued to, that New Jersey Trust insured the life of a New Jersey resident. The New Jersey Policy was then delivered to the New Jersey Trust at its New Jersey address. New Jersey law obviously supplies the rules of decision for this case. And under New Jersey Supreme Court precedent, an investor like Wells Fargo cannot try to enforce a void *ab initio* STOLI policy's death benefit through equitable doctrines such as estoppel. But this Court does not need to conduct a full blown choice of law analysis on the pleadings to dispose of Wells Fargo's promissory estoppel claim because Nebraska law also does not allow parties to agreements that are void *ab initio* as against public policy to try to enforce those agreements through equitable doctrines like estoppel. Indeed, courts around the country have held that they cannot, and will not, use equity to enforce the terms of a contract which violates public policy. Blackletter law dictates that Wells Fargo's promissory estoppel claim fails as a matter of law and that it should be dismissed.

> A. **A STOLI Investor Cannot Enforce A Void *Ab Initio* STOLI Policy Through Equitable Doctrines Such as Estoppel And Thus Wells Fargo's Promissory Estoppel Claim Should Be Dismissed.**

The Policy at issue in this case is governed by New Jersey law. In New Jersey, life insurance policies that lack insurable interest at inception (i.e., stranger-originated life insurance or "STOLI" policies) are void *ab initio* as against public policy. *Sun Life Assurance Co. of Canada v. Wells Fargo Bank, N.A.*, 208 A.3d 839, 840 (N.J. 2019) ("*Bergman II*"). As a consequence, if a

5

policy is deemed to be STOLI, courts cannot enforce the death benefit through equitable doctrines like estoppel. *Id.* at 857 (answering certified questions and holding that STOLI policies cannot be enforced through equitable doctrines like estoppel); *Lincoln Nat. Life Ins. Co. v. Retirement Value LLC*, 2022 WL 17554986, at *9 (D.N.J. Dec. 9, 2022) ("*Majerovic*") (dismissing STOLI investor's promissory estoppel counterclaim); *Columbus Life Ins. Co. v. Wilmington Tr.*, 2021 WL 1712528, at *6 (D.N.J. Apr. 30, 2021), *recon. denied*, 2021 WL 3012864 (D.N.J. July 16, 2021) ("*Goldman*") (dismissing STOLI investors' promissory estoppel counterclaim and striking estoppel affirmative defense); *see also Vasquez v. Glassboro Serv. Ass'n*, 415 A.2d 1156, 1162 (N.J. 1980) (stating that "courts in New Jersey have refused to enforce contracts that violate the public policy of the State" and that "[n]o contract can be sustained if it is inconsistent with the public interest or detrimental to the common good"); *McCarthy v. Nat'l Ass'n for Stock Car Auto Racing*, 577, 218 A.2d 871, 873 (N.J. Super. Ct. 1966), *aff'd*, 226 A.2d 713 (N.J. 1967) (holding "[t]he doctrine of estoppel or waiver asserted cannot be invoked to enforce an agreement which is void as against public policy"); *Whalen v. Schoor, DePalma & Canger Grp.*, 702 A.2d 1311, 1313-14 (N.J. Super. Ct. App. Div. 1997) (collecting cases and noting "[w]e have historically refused to enforce contracts that violate public policy").

The Policy at issue in this case is not governed by Nebraska law. But the same is true in Nebraska; that is, under Nebraska law, STOLI policies are also void *ab initio* for lack of insurable interest. Neb. Rev. Stat. Ann. § 44-704 (life insurance policies are not valid unless they are supported by insurable interest); *Johnson v. Nelson*, 861 N.W.2d 705, 712 (Neb. 2015) ("[L]ife insurance policies issued to a party not having an insurable interest in the life of an insured are considered a wager on the life of another and therefore void as being against public policy."). And, like New Jersey, Nebraska law likewise refuses to enforce agreements that are void *ab initio* as

6

against public policy through equitable doctrines. *See, e.g.*, *McGregor v. E. Bldg. & Loan Ass'n*, 99 N.W. 509, 512 (Neb. 1904) ("[I]f an attempted contract is made illegal by the statute, it, as a contract, is not enforceable even by courts of equity."); *Henni v. Fid. Bldg. & Loan Ass'n*, 86 N.W. 475, 476 (Neb. 1901) ("[O]ur courts [cannot] actively aid in the enforcement of contracts which interfere with, and tend to frustrate, the policy established by the legislature.").

For this reason, courts across the country routinely dismiss promissory estoppel counterclaims and strike other equitable affirmative defenses (including estoppel-based equitable defenses) that seek to enforce a STOLI policy's death benefit. *See, e.g.*, *Goldman*, 2021 WL 1712528, at *6 (D.N.J. Apr. 30, 2021), *recon. denied*, 2021 WL 3012864 (D.N.J. July 16, 2021) (dismissing Security Intermediary's promissory estoppel claim because "this Court cannot order [the insurer] to abide by terms of an agreement that 'never came into existence'…[and therefore, the] promissory estoppel counterclaim is not cognizable if the Policy is determined to be void *ab initio*."); *Majerovic*, 2022 WL 17554986, at *9 (holding "if the Policies are ultimately determined to be STOLI policies, the [promissory estoppel claim] cannot stand."); *Sun Life v. Wells Fargo*, 2016 WL 5746352, at *11-12 (D.N.J. Sept. 30, 2016), *aff'd* 779 F. App'x 927 (3d Cir. 2019) ("*Bergman I*") (holding that "waiver and estoppel" defenses could not force an insurer to pay a STOLI policy's death benefit because STOLI policies violate public policy and can never be enforced); *Sun Life v. Wilmington Trust*, 2018 WL 3805740, at *3 (Del. Super. Ct. 2018) (dismissing promissory estoppel counterclaim because courts will not enforce void *ab initio* agreements) ("*De Bourbon/Frankel*"); *WSFS v. PHL Var. Ins. Co.*, 2014 WL 1389974, at *12 (D. Del. Apr. 9, 2014) (dismissing STOLI investor's promissory estoppel claim by reasoning that "a contract that is void *ab initio* may not be enforced equitably through estoppel"); *Columbus Life v. Wilmington Trust*, 2021 WL 1820573, at *5-6 (D. Del. May 6, 2021) ("*Romano*") (same);

7

*Columbus Life Ins. Co. v. Wells Fargo*, 2021 WL 106919, at *10 (D. Del. Jan. 12, 2021) (*"Snyder"*) (same); *Columbus Life Ins. Co. v. Wilmington Trust*, 2021 WL 537117, at *8 (Del. Super. Feb. 15, 2021) ("*Kluener*") (dismissing investor's promissory estoppel claim "because a void *ab initio* agreement can never be enforced"); *Sun Life v. Wells Fargo*, 2018 WL 2100740 (N.D. Ill. May 7, 2018) ("*Corwell*") (granting motion to strike estoppel defense because, under Illinois law, a plaintiff's allegedly "wrongful conduct does not make a contract that was void at inception enforceable"), *aff'd* 44 F.4th 1024 (7th Cir. 2022).

Wells Fargo, through the same counsel that represents it here, peddled the same theory of estoppel in the *Bergman* case in front of the New Jersey Supreme Court without success. Although it was styled as a defense, Wells Fargo's argument there was the same as it is here: The insurer should be estopped from denying payment of the death benefits because it supposedly tricked Wells Fargo into believing the policy was valid by accepting premium payments and sending routine policy correspondences, even though the insurer allegedly knew all along that the policy was invalid.[6] Upon certified questions, the New Jersey Supreme Court in *Bergman* squarely addressed Wells Fargo's argument that "an 'insurer may waive, or be estopped to raise, the

---

[6] *Compare* Doc. No. 1 (Count III) *with* Wells Fargo Answer, *Bergman*, No. 3:14-cv-05789, Doc. No. 8 (Dec. 22, 2014), at 7 ("Sun Life's claim(s) are barred, in whole or in part, by the doctrine of estoppel. More specifically, Sun Life, on information and belief, has been aware or should have been aware of the facts that it contends justify a rescission of the Policy (and/or a declaration that the Policy is void) either before it issued the Policy, or after it issued the Policy, but well before it received the Death Benefit Claim and well before it commenced the within action to rescind and/or void the Policy. Yet, with such actual or constructive knowledge, Sun Life: issued the Policy; accepted premium for the Policy and otherwise treated the Policy as if it was valid and enforceable at all times prior to receiving the Death Benefit Claim; and took no action to rescind and/or void the Policy until after receiving the Death Benefit Claim, all to the material damage and detriment of Wells Fargo. Moreover, Sun Life has acted in a manner that has caused Wells Fargo to believe that the Policy was a valid and enforceable life insurance policy for which the death benefit would be duly paid upon the death of the Policy's insured because Sun Life: issued the Policy; accepted premium for the Policy and otherwise treated the Policy as if it was valid and enforceable at all times prior to receiving the Death Benefit Claim; and waited until after receiving the Death Benefit Claim before taking any action to rescind and/or void the Policy.").

[STOLI] fraud"—and rejected it—because STOLI policies violate public policy and can never be enforced. *Bergman II*, 208 A.3d at 857.

In an attempt to avoid New Jersey's clear rule that STOLI policies cannot be enforced through equitable doctrines, Wells Fargo cites to an outlier Delaware case called *Sol*. *See* Compl. ¶¶ 37-39 (citing *Sun Life v. U.S. Bank*, 2019 WL 2151695, at *5-7 (D. Del. May 17, 2019) ("*Sol II*"); *Sun Life v. U.S. Bank*, 2019 WL 8353393 (D. Del. Dec. 30, 2019) ("*Sol III*"). But *Sol* does not stand for the proposition that a STOLI policy's death benefit can be enforced through estoppel.

In *Sol*, Judge Stark, early in the case, denied an insurer's motion to dismiss the STOLI investor's promissory estoppel counterclaim and its estoppel-based affirmative defenses. Later in the case, however, the court granted summary judgment to the insurer, declaring the policy void *ab initio* for lack of insurable interest. *Sun Life v. U.S. Bank*, 369 F. Supp. 3d 601, 617 (D. Del. 2019). The case then proceeded to trial on the promissory estoppel counterclaim and another counterclaim for unfair trade practices. At the culmination of that trial, the judge refused to instruct the jury as to the investor's estoppel affirmative defenses. *Sol*, No. 17-cv-00075-LPS, D.I. 287 Tr. of Jury Trial (May 24, 2019), Vol. E at 1028-38 (proposed jury instructions); *id.*, D.I. 267 (D. Del. May 28, 2019) (final jury instructions). And although the jury came back with a verdict against the insurer on the promissory estoppel claim, the judge refused to award expectation damages (i.e., the policy's death benefit) and instead only awarded restitution damages in the form of a premium refund. *Sol III*, 2019 WL 8353393, at *3 (D. Del. Dec. 30, 2019). Thus, as other Delaware judges have recognized, although he came about it differently, Judge Stark did not allow an investor to use promissory estoppel to enforce a STOLI policy's death benefit either. *See, e.g., Cohen*, 2021 WL 1820614, at *6 (D. Del. May 6, 2021) (dismissing STOLI investor's promissory estoppel counterclaim and striking its estoppel-based affirmative defenses and stating "[r]ead together, the

9

court's rulings in *Sol* are not inconsistent with my conclusion that the defenses of waiver, estoppel, and unclean hands are not applicable against an insurer's claim that a life insurance contract is void *ab initio* for lack of insurable interest.").

At bottom, Wells Fargo's promissory estoppel must be dismissed. In the unlikely event that the Policy is ultimately determined to be valid, Ameritas will pay the death claim and the promissory estoppel claim will be moot. But if (as it should), this Court ultimately declares the Policy void *ab initio* for lack of insurable interest, no equitable doctrines (including but not limited to estoppel) can force Ameritas to pay the illegal Policy's death benefit. Accordingly, Wells Fargo's promissory estoppel claim is not legally viable and should be dismissed.

## V. CONCLUSION

For all the foregoing reasons, Ameritas respectfully requests that its instant Motion to Dismiss be GRANTED and Wells Fargo's promissory estoppel claim (Count III) be DISMISSED WITH PREJUDICE.

Respectfully submitted,

*/s/ Christopher M. Schmidt*
Christopher M. Schmidt, # 26096
Randall L. Goyette, # 16251
BAYLOR EVNEN, LLP
1248 O Street, Suite 600
Lincoln, NE 68508
(402) 475-1075
cshmidt@baylorevnen.com
rgoyette@baylorevnen.com

Joseph M. Kelleher (*pro hac vice forthcoming*)
Nicolas A. Novy (*admitted pro hac vice*) (PA Bar No. 319499)
Chase A. Howard (*pro hac vice forthcoming*)
COZEN O'CONNOR
One Liberty Plaza, Suite 2800
Philadelphia, PA 19103
(215) 665-2000

jkelleher@cozen.com
nnovy@cozen.com
chasehoward@cozen.com
*Attorneys for Defendant, Ameritas Life Insurance Corp.*

**CERTIFICATE OF COMPLIANCE**

I, Nicolas A. Novy, herby certify that Ameritas Life Insurance Corporation's Brief In Support Of Its Motion To Dismiss Plaintiff's Promissory Estoppel Claim (the "Brief") complies with Local Rule 7.1(d), and further certify that the Brief contains 3,570 words, which includes all text, the caption, headings, footnotes, and quotations per Microsoft's word-count function.

*/s/ Nicolas A. Novy*
Nicolas A. Novy, Esq.