IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| Wells Fargo Bank, N.A., as Securities Intermediary, | ) ) ) | Case No.: 4:21-cv-03118 |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | **PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS** |
| Ameritas Life Insurance Corp., | ) ) ) | |
| Defendant. | ) | |

Plaintiff, Wells Fargo Bank, N.A., in its capacity as securities intermediary[1] ("Securities Intermediary" or "Plaintiff") for its client, Vida Longevity Fund, LP ("Vida"), by and through its undersigned counsel, submits this Brief in Opposition to the Motion to Dismiss Plaintiff's Promissory Estoppel Claim (the "Motion") filed by Defendant, Ameritas Life Insurance Corp. ("Ameritas"). For the following reasons, the Motion should be denied.

## STATEMENT OF FACTS

This is an action for damages with respect to Universal Life Insurance Policy number U000044736 (the "Policy"), which insured the life of Jerry Freid for $4 million and was issued on September 8, 2008, by The Union Central Life Insurance Company (Ameritas' predecessor in interest with respect to the Policy). Compl. ¶¶ 1, 11-12, ECF No. 1

In May 2011, Securities Intermediary became the record owner of the Policy after its customer purchased the Policy on the open market in a regulated life settlement transaction. Ameritas updated its records to reflect Securities Intermediary as the record owner without objection. Compl. ¶¶ 13-15, ECF No. 1.

---

[1] At all times herein Wells Fargo Bank, N.A. acts solely in its capacity as a securities intermediary for on behalf of its client, Vida and does not act in its individual capacity. *See e.g.*, Neb. Rev. Stat. Ann. § 8-102(a)(14) (defining the role of a securities intermediary).

1

In 2012, the insurance agents who produced the Policy for Ameritas were indicted for a conspiracy to commit mail and wire fraud, and the commission of mail and wire fraud, among other crimes, as a result primarily of making material misrepresentations to a number of life insurance companies, including Ameritas, as part of an illegal stranger owned life insurance ("STOLI") scheme.[2] The criminal action was captioned, *United States of America v. Michael Binday, James Kevin Kergil, and Mark Resnick*, No. 12-cr-152 (S.D.N.Y.) ("Binday Criminal Action"). Compl. ¶ 16, ECF No. 1.

On October 7, 2013, the defendants in the Binday Criminal Action were found guilty by the jury. Compl. ¶ 17, ECF No. 1; Binday Criminal Action, ECF No. 247-48 ("JURY VERDICT").

In 2014, as part of the sentencing submission by the Government in the Binday Criminal Action, Special Agent Thomas W. McDonald of the F.B.I. submitted a Supplemental Declaration to the court dated July 23, 2014. *See* Declaration of Andrew Dykens ("Dykens Decl.") in Opposition to Defendant Ameritas' Motion to Dismiss, Exhibit ("Ex.") 1, ¶ 30 (Binday Criminal Action Docket, Dkt. No. 330). In paragraph 30 of his Supplemental Declaration, Special Agent McDonald referenced Attachment AA to his declaration, which he described as a revised Summary Workbook that included corrected "commissions paid out by . . . Union Central on the Scheme Policies." *Id*. ¶ 30. Attachment AA to Special Agent McDonald's Supplemental Declaration, which is a native spreadsheet, was filed in redacted format at Docket No. 381 in the Binday Criminal Action, a copy of which is attached in PDF format as Exhibit 2 to the Dykens Declaration.

---

[2] A "STOLI" policy is simply a policy that is owned by an investor. *PHL Variable Ins. Co. v. Bank of Utah*, 780 F.3d 863, 865 (8th Cir. 2015), as corrected (Mar. 17, 2015). The acquisition of an in-force life insurance policy by an investor on the so-called "secondary market" is perfectly legal. *Id*. at 865-66, 869-71. However, a STOLI policy may be unlawful if, at the time it is issued, the owner lacks an interest in the life of the insured continuing (*i.e.* an "insurable interest"). *Id*. at 869; s*ee First Penn-Pac. Life Ins. Co. v. Evans*, 313 F. App'x 633, 636 (4th Cir. 2009) ("intent to transfer a policy does not alone destroy an insurable interest; a third party must be involved in the procurement of the policy to eliminate the insurable interest.").

The "UC" (Union Central) tab to that spreadsheet (page 12 of 13 of Binday Criminal Action Docket, Dkt. No. 381) identifies by policy number each of the Union Central life insurance policies that were included within the "Scheme Policies" in the Binday Criminal Action. Dykens Decl., Ex. 2, UC Tab, p. 12 of 13. The third Union Central policy listed on page 12 of 13 of Exhibit 2 is policy number ending 44736, with a face value of $4 million, which is the life insurance Policy that is the subject of this action. The "UC" Tab of the spreadsheet calculates the "Scheme Commissions" paid on the life insurance policies that Union Central paid, and for which it sought restitution in the Binday Criminal Action. Attachment AA to Special Agent McDonald's July 23, 2014 Supplemental Declaration, of which this Court may take judicial notice,[3] makes crystal clear that Union Central/Ameritas claimed that the Policy was issued as part of an illegal STOLI scheme as early as 2014. Compl. ¶¶ 17-20, ECF No. 1; Dykens Decl., Ex. 1 ¶¶ 15, 30.

Nevertheless, from 2014 until July 29, 2020, Ameritas sent Securities Intermediary annual statements, policy illustrations, and premium lapse notices stating that the Policy was valid and enforceable. Compl. ¶ 22, ECF No. 1.

On July 29, 2020, Jerry Fried died. *Id*. ¶ 24.

On August 17, 2020, a policy servicing agent submitted a claim for the Policy's death benefit to Ameritas on behalf of Securities Intermediary's customer, Vida. *Id*. ¶ 25.

Rather than pay the death claim, on February 9, 2021, Ameritas commenced an action against Securities Intermediary in the United States District Court for the District of New Jersey captioned, *Ameritas Life Insurance Corp. v. Wells Fargo Bank, National Association, as securities intermediary*, No. 2:21-cv-02136 (D.N.J.) (the "New Jersey Action"), in which Ameritas seeks to

---

[3] Courts may "take judicial notice of proceedings in other courts if they relate directly to matters at issue." *Hart v. C.I.R.*, 730 F.2d 1206, 1208 (8th Cir. 1984) (taking judicial notice of sentencing proceedings).

rescind the Policy based on facts that it was aware of no later than 2014, and to retain all of the premium paid for the Policy, including premium that it demanded and accepted after it claimed in 2014 in the Binday Criminal Action that the Policy was issued as part of an illegal STOLI scheme. *See* Compl. ¶¶ 7, "WHEREFORE", ¶ e, New Jersey Action, ECF No. 1.

On February 10, 2021, one day after commencing the New Jersey Action, Ameritas informed Securities Intermediary that it intended to deny the death claim. In a February 10, 2021 letter, Ameritas stated: "[b]ased on our review, we have determined that the policy was procured as a stranger-originated life insurance transaction ('STOLI') which is in violation of New Jersey public policy. As such, please be advised that it is our intention to deny the claim and void the policy." Opinion & Order at 2, New Jersey Action, ECF No. 49.

On June 14, 2021, Securities Intermediary commenced this action. Compl., ECF No. 1.

On February 14, 2022, Securities Intermediary moved to stay the New Jersey Action in favor of this action. Notice of Motion of Wells Fargo Bank, N.A., as Securities Intermediary's Mot. to Stay, New Jersey Action, ECF No. 29.

On June 16, 2022, Magistrate Judge Andre M. Espinosa granted Securities Intermediary's motion and stayed the New Jersey Action in favor of this action. Opinion & Order, New Jersey Action, ECF No. 49.[4] In his opinion and order granting Securities Intermediary's motion to stay, Magistrate Judge Espinosa held that while "Ameritas asserts that the claim investigation it launched on or about August 17, 2020, revealed that the Policy was 'likely procured as part of a STOLI scheme'" (Opinion & Order at 10, New Jersey Action, ECF No. 49), Ameritas' assertion fails "to square with the involvement of Union Central, Ameritas's predecessor in interest with respect to the Policy, in the Binday Criminal Action." *Id*. at 11. Magistrate Judge Espinosa

---

[4] The Order staying the New Jersey Action was affirmed on October 27, 2022. Opinion, New Jersey Action, ECF No. 53.

4

concluded that "[e]ven assuming the truth of its belated discovery of facts indicating the Policy originated as a STOLI transaction, Ameritas does not dispel the strong inference of inequitable conduct" in filing the New Jersey Action prior to notifying Securities Intermediary that its death claim would be denied. *Id*.

On December 21, 2022, Ameritas filed the Motion.

## STANDARD OF REVIEW

In ruling on a motion to dismiss, the Court must view the allegations in the complaint liberally in the light most favorable to Plaintiff, the non-moving party. *Eckert v. Titan Tire Corp*., 514 F.3d 801, 806 (8th Cir. 2008) (*citing Luney v. SGS Auto Servs., Inc*., 432 F.3d 866, 867 (8th Cir. 2005)). A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). To satisfy this requirement, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Corrado v. Life Invs. Ins. Co. of Am.*, 804 F.3d 915, 917 (8th Cir. 2015) (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The Court "must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005) (citation omitted). Thus, as a practical matter, a dismissal under Rule 12(b)(6) should be granted "'only in the unusual case in which a plaintiff includes allegations that show, on the face of the complaint, that there is some insuperable bar to relief.'" *Strand v. Diversified Collection Serv., Inc*., 380 F.3d 316, 317 (8th Cir. 2004) (quoting *Frey v. Herculaneum*, 44 F.3d 667, 671 (8th Cir. 1995). The issue on a motion to dismiss is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his or her claim. *Estate of Harlan I. Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir. 1995).

# ARGUMENT

Ameritas moves to dismiss Securities Intermediary's promissory estoppel claim under Fed. R. Civ. P. 12(b)(6) for failure to state a claim. Ameritas argues that Securities Intermediary fails to state a claim for promissory estoppel because, if the contract at issue here is held to be illegal, then it cannot be enforced under any circumstances, including through the application of "equitable doctrines such as estoppel." Ameritas' Brief in Support of its Motion to Dismiss ("Moving Br.") at 5-6, ECF No. 76. Ameritas' argument is wrong and its motion should be denied for two simple reasons. First, both New Jersey and Nebraska law permit a court to enforce the terms of an otherwise illegal contract through equitable doctrines like promissory estoppel under the circumstances presented here and, second, Securities Intermediary has sufficiently pled all of the elements of its promissory estoppel claim.

### A. New Jersey and Nebraska Law Permit a Court to Enforce the Terms of an Illegal Agreement in Favor of an Innocent Party.

Ameritas argues that a court may never enforce the terms of an illegal contract and instead must leave the parties to an illegal agreement where it finds them. *Id*. at 5-6. Neither New Jersey nor Nebraska law adheres to such a rigid rule. Instead, when adjudicating the effects of an illegal agreement, both states' law permits a court to afford relief as justice requires "when the parties are not *in pari delicto*" and one of the parties to the contract is innocent.[5] *In re: Resorts Int'l, Inc*., 181

---

[5] While Ameritas argues that New Jersey law governs the Policy, "before an answer is filed or discovery taken . . . a choice of law analysis is premature." *Cantonis v. Stryker Corp*., Civil Action No. 09-3509 (JRT/JJK), 2011 WL 1084971, at *4 (D. Minn. Mar. 21, 2011). A District Court sitting in diversity jurisdiction applies the choice of law rules of the forum state. Nebraska applies the Restatement of Conflicts of Law to determine the law applicable to a promissory estoppel claim. *First Nat'l Equip. Fin. v. Cameron Ins. Cos.*, CASE NO. 8:10CV370, 2011 WL 13156793, at *5 (D. Neb. Oct. 24, 2011) (applying Restatement § 193); *F.D.I.C. v. Nordbrock*, 102 F.3d 335, 338 (8th Cir. 1996) (Nebraska "specifically adopts the approach set forth in section 188 of the Restatement (Second) of Conflict of Laws to determine the choice of law applicable to a contract action"). Such an analysis requires the Court to determine which state had the most significant

F.3d 505, 512 (3d Cir. 1999), *abrogated on other grounds by Merit Mgmt. Grp., LP v. FTI Consulting, Inc.*, 138 S. Ct. 883 (2018); *Prindiville v. Johnson & Higgins*, 113 A. 915, 919 (N.J Ch. 1921), *aff'd*, 116 A. 785 (N.J. 1922) ("If the contract is illegal, affirmative relief against it will not be granted . . . unless the contract remains executory, or unless the parties are considered not in equal fault, as where . . . there has been fraud or oppression on the part of the defendant."); *Bankers' Sur. Co. v. Willow Springs Beverage Co.*, 176 N.W. 82, 84 (Neb. 1920) ("[T]he innocent party in such a transaction should be granted protection and saved from the loss of that right which would unquestionably exist were no wrongful act on the part of the other involved."); *see Klein v. Pederson*, 91 N.W. 281, 282 (Neb. 1902); ("***The only rigid rule forbidding relief is where parties are in equal guilt***. While the law does not draw fine distinctions in ascertaining equality of wrong, it recognizes the fact that one party to such an arrangement is not necessarily an equal party in guilt, or consciously guilty at all, and will not deny relief to an injured party against the one who is really the deceiver. . . .") (quoting *Hess v. Culver*, 43 N.W. 994 (Mich. 1889)) (emphasis added); *see also* 27A Am. Jur. 2d *Equity* § 38 ("The broad principle of denying relief to parties to an illegal contract is subject to a number of exceptions, however, as, for example, where the parties are not in pari delicto and there is some showing of fraud . . . .").

Under New Jersey and Nebraska law, equitable doctrines like promissory estoppel exist precisely to afford courts the flexibility to fashion just results. Indeed, "[t]he essential justification for the promissory estoppel doctrine is to avoid the substantial hardship or injustice which would result if such a promise were not enforced." *Pop's Cones, Inc. v. Resorts Int'l Hotel, Inc.*, 704 A.2d 1321, 1324 (N.J. Super. Ct. App. Div. 1998); *Weitz Co., LLC v. Hands, Inc.*, 882 N.W.2d 659, 668 (Neb. 2016). As the former highest court of New Jersey has held: "[w]here the contract is illegal

---

relationship to the claim based on a number of fact-dependent criteria. As such, a choice of law analysis is premature.

and both parties are, to some extent, involved in the illegality, but are not *in pari delicto*, a court of equity may, in furtherance of justice and sound public policy, aid the one who is comparatively the more innocent and ***may grant him full affirmative relief***" by, among other things, "***sustaining a suit brought to enforce the contract itself, or if this be impossible, by permitting him to recover the amount justly due, by means of an appropriate action not directly based upon the contract.***" *McAllister v. McAllister Coal Co.*, 184 A. 716, 720 (N.J. Ch. 1936) (emphasis added), *aff'd*, 190 A. 52 (N.J. 1937), *and aff'd*, 190 A. 53 (N.J. 1937).

Nebraska and New Jersey law endows courts with such equitable power because public policy demands that wrongdoers never profit from their own misconduct. *Ryan v. Motor Credit Co.*, 23 A.2d 607, 621 (N.J. Ch. 1941) ("Equity will never assist a party to carry into effect his own intentional violation of the law'") (citation omitted), *decree aff'd*, 28 A.2d 181 (N.J. 1942); *Sammarone v. Bovino*, 928 A.2d 140, 146 (N.J. Super. Ct. App. Div. 2007) ("one who induces the alleged wrongdoing should not benefit as a result of it." (quoting *Joe D'Egidio Landscaping, Inc. v. Apicella*, 766 A.2d 1164, 1167 (N.J. Supr. Ct. App. Div. 2001))). To uphold this public policy, courts in both Nebraska and New Jersey have enforced the terms of an illegal or void contract in favor of innocent parties and against those parties that participated in illegal conduct. *Tave v. Furst*, 442 A.2d 658, 660 (Ocean Cnty. Ct. 1981) ("A modified enforcement of the [void] agreement . . . commends itself not only from the standpoint of preventing unjust forfeiture, but also as a possible deterrent to future efforts at undermining the salutory purposes of the rent control provisions."); *Bankers' Sur. Co.*, 176 N.W. at 84; *Kittle v. De Lamater*, 4 Neb. 426, 427-28 (1876).

Securities Intermediary's breach of contract and promissory estoppel claims ask the Court to apply these bedrock equitable principles here to hold Ameritas accountable for its misrepresentations and intentional participation in an allegedly unlawful STOLI scheme. If

Ameritas is ultimately correct that the Policy is an unlawful STOLI policy (Moving Br. at 1, ECF No. 76), then Securities Intermediary has alleged that Ameritas knew no later than 2014 of all of the facts on which it seeks to rescind the Policy and escape liability. Compl. ¶¶ 2, 31, 67, ECF No. 1. Securities Intermediary has alleged, and public court records clearly show, that Ameritas directly participated in the Binday Criminal Action, asserted in 2014 that the Policy was part of a STOLI scheme, and sought restitution for "Scheme Commissions" it paid in connection with the Policy. Dykens Decl., Ex. 1 ¶¶ 15, 20; Dykens Decl., Ex. 2, UC Tab, p. 12 of 13. Meanwhile, Ameritas told its customer, Securities Intermediary, that the Policy was valid and enforceable and repeatedly demanded that premium be paid in order to keep the Policy in force. Compl. ¶¶ 22, 32-33, 57, 62-64, ECF No. 1. Thus, if the Policy is somehow an illegal STOLI contract, then Ameritas knowingly kept an illegal policy on its books, participated in an unlawful STOLI scheme, and intentionally misrepresented the status of that Policy to its customer in order to continue to collect substantial premium. Under such circumstances, refusing to enforce the Policy or Ameritas's repeated promises to honor it would allow Ameritas to profit from its misrepresentations by allowing it to reap the benefits of its participation in an illegal STOLI scheme without having to pay Securities Intermediary the Policy death benefit. *See Klein*, 91 N.W. at 282 ("If a party should be allowed immunity under such circumstances, he would be permitted to take advantage of his own wrong, and reap a benefit from his own fraud.") (citation omitted).

Importantly, the District Court in the New Jersey Action recognized the inherent inequity in allowing Amertias to rescind the Policy given Union Central's participation in the Binday Criminal Action when it granted Securities Intermediary's motion to stay the New Jersey Action. The Court held that Ameritas' assertion that it first discovered that the Policy "was 'likely procured as part of a STOLI scheme" in 2021 only after it had received the death claim "fails to square with

9

the involvement of Union Central, Ameritas's predecessor in interest with respect to the Policy, in the Binday Criminal Action" and that the timeline of Ameritas's filing the New Jersey Action raised the "strong inference of inequitable conduct." Opinion & Order at 10-11, New Jersey Action, ECF No. 49.

In contrast to Ameritas, Securities Intermediary has alleged that it's customer, Vida, is a bona fide purchaser of the Policy (Compl. ¶¶ 4, 23, ECF No. 1) and that Securities Intermediary had no involvement in the Policy's procurement, issuance, or the Binday Criminal Action. *Id*. Thus, to the extent the Court holds the Policy is an unlawful contract, Securities Intermediary has alleged facts which support the enforcement of Ameritas' promises against Ameritas, the party that participated in the illegal conduct at issue, and in favor of innocent parties which are not *in pari delicto*. Securities Intermediary's allegations clearly anchor its promissory estoppel and breach of contract claims in the widely-recognized exception to the general rule that courts will not enforce the terms of illegal contracts. *McAllister*, 184 A. at 720 (courts "have steadfastly refused to lend their aid to a wrongdoer either by the enforcement of an illegal contract ***or by relieving the wrongdoer from the obligations thereof.***"); *Bankers' Sur. Co.*, 176 N.W. at 84 ("[T]he innocent party in such a transaction should be granted protection and saved from the loss of that right which would unquestionably exist were no wrongful act on the part of the other involved."); *Kittle*, 4 Neb. at 427-28; *see Klein*, 91 N.W. at 281 ("where, through ignorance and without any intent to violate the law, one is led by fraud and misrepresentation to the performance of an act against public policy, the courts will not deny him relief against those whose fraud persuaded him to the act, and who seek to profit therefrom."). Accordingly, Ameritas' motion to dismiss for failure to state a claim should be denied.

Moreover, enforcing the contract against Ameritas, whether through Securities Intermediary's breach of contract or promissory estoppel claims, directly *promotes* the public policy of preventing unlawful wagering though STOLI policies, which Ameritas purportedly seeks to vindicate. Moving Br. at 1-2. Should the Policy be deemed an illegal "STOLI" policy, Securities Intermediary has alleged that Ameritas learned that the Policy was STOLI no later than 2014, yet took no action to rescind the Policy or notify Securities Intermediary that it considered the Policy illegal. Instead, Ameritas actively participated in an allegedly unlawful STOLI scheme by continuing to bill and collect premium from Securities Intermediary until the insured's death in 2020, all with full knowledge that it considered the Policy illegal. Compl. ¶¶ 32-34, 57, 62-64, ECF No. 1. Only after it had collected as much premium as possible from Securities Intermediary's customer, did Ameritas seek to have the Policy declared "void" based on facts it has indisputably known since 2014. *Id.* ¶¶ 32-34, 57, 62-64; Dykens Decl., Ex. 1 ¶¶ 15, 20; Dykens Decl., Ex. 2, UC Tab, p. 12 of 13. But if the public policy of Nebraska and New Jersey is to prevent illegal STOLI policies (as Ameritas asserts (Moving Br. at 5-7, ECF No. 76)), then requiring life insurance companies to effectively underwrite policies in the first instance, and to act promptly when they learn that they have issued an illegal STOLI policy, are the best ways to eliminate such policies. Insurance companies have no incentive to do either of these things if they never face consequences for knowingly issuing or maintaining illegal STOLI policies. *See* Jacob Loshin, *Insurance Law's Hapless Busybody: A Case Against the Insurable Interest Requirement*, 117 Yale L.J. 474, 474 (2007) ("the best way for courts to prevent insurance contracts on the life or property of strangers may be to refrain from invalidating such contracts in the first place.").

In fact, allowing an insurer to reap the benefits of a policy it knows to be STOLI and illegal only *incentivizes* the insurer to engage in the misconduct that Ameritas has engaged in here: bill

and collect premium for as long as possible knowing full well that it will challenge the Policy as soon as the insured dies, all while representing to its customer that the company would comply with its contractual obligations. The Nebraska Supreme Court said it best: "If a party should be allowed immunity under such circumstances, he would be permitted to take advantage of his own wrong, and reap a benefit from his own fraud." *Klein*, 91 N.W. at 282 (citations omitted). New Jersey and Nebraska courts "have steadfastly refused to lend their aid to a wrongdoer either by the enforcement of an illegal contract ***or by relieving the wrongdoer from the obligations thereof.***" *McAllister*, 184 A. at 720 (emphasis added). As such, a public policy aimed at the prevention of unlawful STOLI policies militates in favor of enforcing Ameritas's promises that the Policy would be paid to effectively dissuade Ameritas and other insurers from issuing and maintaining unlawful STOLI policies in the future.

Ameritas cites a number of decisions from the United States District Court for the District of New Jersey for the proposition that equitable doctrines may never be used to enforce the terms of an agreement that violates public policy. Moving Br. at 6-7, ECF No. 76. Yet these New Jersey federal cases have not been adopted by the state courts and are not controlling authority. None of them recognizes that New Jersey black letter law permits an innocent party to a contract to enforce it against a party that caused or participated in the conduct causing the contract's illegality.[6]

Moreover, the New Jersey and Nebraska state cases relied on by Ameritas are inapposite because they do not stand for the proposition that a court may *never* equitably enforce the terms

---

[6] *Lincoln Nat'l Life Ins. Co. v. Ret. Value LLC*, Civil Action No. 21-20438 (MAS) (LHG), 2022 WL 17554986, at *5 (D.N.J. Dec. 9, 2022); *Sun Life Assurance Co. of Can. v. Wells Fargo bank, N.A., as Securities Intermediary*, Civil Action No. 14-5789 (PGS) (LHG), 2016 WL 5746352, at *11-12 (D.N.J. Sept. 30, 2016), *aff'd*, 779 F. App'x 927 (3d Cir. 2019); *Columbus Life Ins. Co. v. Wilmington Tr., as Securities Intermediary*, Civil Action No. 20-7959 (JMV) (MF), 2021 WL 1712528, at *6 (D.N.J. Apr. 30, 2021), *recon. denied*, 2021 WL 3012864 (D.N.J. July 16, 2021).

of a void or illegal contract in favor of an innocent party and against a guilty party that participated in the unlawful conduct at issue. No New Jersey or Nebraska state court has ever abrogated the black letter rule that an innocent party may enforce the terms of an illegal contract against a party that participated in the unlawful conduct that renders that contract illegal, and the cases cited by Ameritas are entirely consistent with that rule. In *Sun Life Assurance Co. of Canada v. Wells Fargo Bank, N.A.*, 208 A.3d 839, 841 (N.J. 2019) ("*Bergman*"), the New Jersey Supreme Court considered two narrow certified questions of New Jersey Law, neither of which required the court to address the circumstances under which an innocent party could enforce the terms of an illegal STOLI policy against an insurer that had knowingly participated in the STOLI scheme.[7] In fact, *Bergman* actually recognizes that the "less culpable party" may be entitled to a refund of premium, depending on the facts of each case. *Id*. at 858-59.

The remaining New Jersey and Nebraska cases relied on by Ameritas are distinguishable because none of them involve an innocent plaintiff attempting to enforce an illegal agreement against a guilty defendant that was responsible for or participated in illegal conduct. Thus, the courts in the cases relied on by Ameritas had no occasion to apply or even mention the *in pari delicto* exception that applies in this case.[8] *See McCarthy v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 A.2d 871, 872 (N.J. Super. Ct. App. Div. 1966), *aff'd*, 226 A.2d 713 (N.J. 1967) (refusing negligent defendant's request to enforce illegal waiver); *Vasquez v. Glassboro Serv. Ass'n, Inc.*,

---

[7] "(1) Does a life insurance policy that is procured with the intent to benefit persons without an insurable interest in the life of the insured violate the public policy of New Jersey, and if so, is that policy void ab initio?" *Bergman*, 208 A.3d at 843.
"(2) If such a policy is void ab initio, is a later purchaser of the policy, who was not involved in the illegal conduct, entitled to a refund of any premium payments that they made on the policy?" *Id*.

[8] Ameritas relies on cases from Delaware and Illinois which are obviously are inapposite as they do not apply New Jersey or Nebraska law. Moving Br. at 7-8, ECF No. 76.

13

415 A.2d 1156, 1166 (N.J. 1980) (enforcing employment agreement between migrant worker and employer where "public policy require[d] the implication of a provision for a reasonable time to find alternative housing."); *Whalen v. Schoor, DePalma & Canger Grp., Inc.*, 702 A.2d 1311, 1315 (N.J. Super. Ct. App. Div. 1997) (enforcing valid agreement); *McGregor v. E. Bldg. & Loan Ass'n*, 99 N.W. 509, 512 (Neb. 1904) (enforcing "perfectly legal and valid contract"); *Henni v. Fid. Bldg. & Loan Ass'n*, 86 N.W. 475, 475-476 (Neb. 1901) (refusing guilty plaintiff's request to enforce illegal mortgage).

### B. Securities Intermediary Has Sufficiently Plead a Claim for Promissory Estoppel Under New Jersey and Nebraska Law.

Ameritas's motion to dismiss must be denied because Securities Intermediary has adequately stated a claim for promissory estoppel. Under New Jersey and Nebraska law, "[t]he essential justification for the promissory estoppel doctrine is to avoid the substantial hardship or injustice which would result if such a promise were not enforced." *Pop's Cones, Inc.*, 704 A.2d 1321 at 1324 (citation omitted); *Weitz Co., LLC* 882 N.W.2d at 668. To state a claim for promissory estoppel therefore requires a plaintiff to plead: "(1) a promise that the promisor should have reasonably expected to induce the plaintiff's action or forbearance, (2) the promise did in fact induce the plaintiff's action or forbearance, and (3) injustice can only be avoided by enforcing the promise." *Weitz Co., LLC*, 882 N.W.2d at 668; *see E. A. Coronis Assocs. v. M. Gordon Const. Co.*, 216 A.2d 246, 250 (N.J. Super. Ct. App. Div. 1966). The elements of a promissory estoppel claim, including the amount of damages to be awarded, if any, are "essentially factual" issues (*E. A. Coronis Associates*, 216 A.2d at 251) that must be determined from the circumstances of each case, *i.e.*, "as justice requires." *Conradi v. Eggers Consulting Co.*, No. A-02-852, 2004 WL 51208, at *8 (Neb. Ct. App. Jan. 13, 2004); *see Wells Fargo Bank NW., N.A. v. Am. Gen. Life Ins. Co.*,

14

Civil Action No. 10-1327 (FLW), 2011 WL 1899338, at *8 (D.N.J. May 19, 2011) (plaintiff stated claim for promissory estoppel).

Here, Securities Intermediary has alleged that: (1) Ameritas repeatedly represented to Securities Intermediary and its customer, Vida, that the Policy was valid and enforceable in written policy correspondence, including annual statements and premium and lapse notices (Compl. ¶¶ 22, 32-34, 62-64, ECF No. 1); (2) Ameritas reasonably expected its promises to induce Securities Intermediary's customer's action or forbearance (*id*. ¶¶ 22-23, 64-66); (3) Securities Intermediary's customer reasonably relied on Ameritas' promises when it purchased the Policy and continued to pay premium until the insured's death to keep the Policy in force (*id*. ¶¶ 22-23, 64-66); (4) injustice can only be awarded by enforcing Ameritas' promises that the Policy would be paid in order to rectify its deceitful and unfair conduct. (*id*. ¶¶ 22-23, 62-67). Accordingly, Securities Intermediary has stated a claim for promissory estoppel and Ameritas' motion should be denied.

## CONCLUSION

For the reasons set forth above, Ameritas's Motion should be denied.

DATED: January 23, 2023.

Respectfully submitted,

Wells Fargo Bank, N.A., as Securities Intermediary, Plaintiff

By: /s/ *Joel D. Heusinger*
Joel D. Heusinger, No. 18326
Audrey R. Svane, No. 25830
WOODS AITKEN LLP
301 South 13th Street, Suite 500
Lincoln, Nebraska 68508
Telephone: (402) 437-8500
Facsimile: (402) 437-8558
jheusinger@woodsaitken.com
asvane@woodsaitken.com

and

Julius A. Rousseau, III (*pro hac vice*)
James M. Westerlind (*pro hac vice*)
Andrew Dykens (*pro hac vice*)
ARENTFOX SCHIFF LLP
1301 Avenue of the Americas, Fl. 42
New York, New York 10019
Telephone: (212) 484-3900
jule.rousseau@afslaw.com
james.westerlind@afslaw.com
andrew.dykens@afslaw.com

*Attorneys for Plaintiff Wells Fargo Bank, N.A., as Securities Intermediary*

## CERTIFICATE OF COMPLIANCE

      I certify that this reply brief complies with the word limitations of NECivR 7.1, as this brief contains 5314 words. This count includes all words, including the caption, headings, footnotes, and quotations, as determined by Microsoft 365®'s word count function.

      By:   *s/ Joel D. Heusinger*
                  Joel D. Heusinger