# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| Wells Fargo Bank, N.A., as Securities Intermediary,<br><br>    Plaintiff,<br><br>v.<br><br>Ameritas Life Insurance Corp.,<br><br>    Defendant. | Case No.: 4:21-cv-03118-JMG-JMD<br><br>**AMENDED COMPLAINT AND JURY DEMAND** |

Plaintiff Wells Fargo Bank, N.A., in its capacity as securities intermediary for its client ("Securities Intermediary" or "Plaintiff"), by and through its undersigned counsel, pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure and written consent provided by defense counsel by email dated January 10, 2024 (*see* ECF No. 176-2), hereby amends its Complaint against defendant Ameritas Life Insurance Corp. ("Ameritas" or "Defendant"), alleges upon personal knowledge as to its own conduct, and information and belief with respect to the intent and conduct of others, as follows:

## INTRODUCTION

1. This is an action for damages with respect to Universal Life Insurance Policy number U000044736 (the "Policy") issued by The Union Central Life Insurance Company ("Union Central," Ameritas' predecessor with respect to the Policy) on September 8, 2008 to The Jerry Freid Irrevocable Trust dated December 18, 2007 (the "Freid Trust") and insuring the life of Jerry Freid in the face amount of $4 million.

2. Jerry Freid passed away; Securities Intermediary timely submitted a claim for the death benefit under the Policy to Ameritas; and Ameritas has wrongfully failed to pay the death

benefit due and owing. Instead, Ameritas commenced a lawsuit in federal court in New Jersey against Securities Intermediary (which court lacks personal jurisdiction over Securities Intermediary), seeking to rescind the Policy on the ground that the Policy was issued as part of an illegal stranger originated life insurance ("STOLI") scheme, and, therefore, in violation of applicable insurable interest laws. But Ameritas was aware in 2014 of all of the facts that it now belatedly relies upon to seek rescission of the Policy in the wrong court, and demanded, received, and accepted premiums, and represented to Securities Intermediary in writing that the Policy was valid and enforceable, for years after having such knowledge.

3. Indeed, in 2014, Union Central claimed to be one of a number of life insurance company victims in a federal criminal trial in the Southern District of New York, wherein defendants Michael Binday, James Kevin Kergil, and Mark Resnick were convicted and sentenced to prison for engaging in illegal STOLI conduct. In particular, in connection with the restitution that the defendants in the criminal action were ordered to pay to the life insurers, Union Central claimed in 2014 that the subject Freid Policy was procured as part of the criminal defendants' illegal STOLI scheme. The subject Freid Policy was included in the Government's request to the court for restitution in that criminal action.

4. Securities Intermediary had nothing to do with the procurement of the Freid Policy or any of the alleged STOLI activity for which Union Central sought and received restitution. Rather, it became the owner and beneficiary of record of the Policy, without any objection from Union Central, years after the Policy had been issued. Securities Intermediary's client, a securities entitlement holder, acquired the Policy legitimately in the secondary life insurance market as a bona fide purchaser for value, and retained Securities Intermediary to hold title to the Policy with the life insurance company.

5. This lawsuit seeks to put Ameritas' deceptive and unfair insurance trade practices to an end. It seeks a judicial declaration that Ameritas is estopped from seeking to rescind the Freid Policy, and that Ameritas must pay the death benefit owed under the Policy, with interest, and damages for Ameritas' bad faith conduct.

## THE PARTIES

6. Securities Intermediary is the current owner and beneficiary of record of the Freid Policy, as securities intermediary on behalf of its customer. Securities Intermediary is a national banking association organized and existing under federal law with its main office located in Sioux Falls, South Dakota, as identified in its Articles of Association. Securities Intermediary maintains a principal place of business in California. Securities Intermediary is not a citizen of Nebraska for purposes of diversity jurisdiction.

7. At all times herein Securities Intermediary acts solely as securities intermediary for a third-party investor, and does not act in its individual capacity. *See e.g.*, N.Y. U.C.C. § 8-102(a)(14)(ii) (defining role of securities intermediary).

8. Ameritas is a Nebraska corporation with its principal places of business in Nebraska and Ohio. Ameritas is the successor in interest to Union Central with respect to the Policy.

## JURISDICTION & VENUE

9. This Court has original jurisdiction over this matter pursuant to 28 U.S.C. § 1332 based upon the diversity of citizenship of the parties, and the amount in controversy exceeding $75,000, exclusive of interest and costs.

10. Venue lies within this District under the provisions of 28 U.S.C. § 1391(a)(1), (a)(2), and 1391(b) because Ameritas conducts business in the District of Nebraska and a substantial part of the events and/or omissions giving rise to the bad faith claims against Ameritas

occurred within this District.

## FACTS

11. On December 18, 2007, Jerry Freid caused the Trust to be created. The trustee of the Trust was Michael Block, and the sole beneficiary of the Trust was Jerry Freid's daughter.

12. In 2008, the Trust applied to Union Central for the Policy, and Union Central issued the Policy to the Trust on September 8, 2008.

13. On or about May 12, 2011, almost three years after the Policy had been issued, and more than two years after the expiration of the contestability provision in the Policy, the trustee of the Trust executed a Policy Owner's Change of Service Request whereby the Trust changed the owner and beneficiary of the Policy to Securities Intermediary.

14. Union Central accepted the Policy Owner's Change of Service Request without objection and changed the owner and beneficiary of the Policy to Securities Intermediary.

15. Securities Intermediary has since held the Policy in a securities account for the benefit of its client.

16. In 2012, insurance producers Michael Binday, James Kevin Kergil, and Mark Resnick were indicted for a conspiracy to commit mail and wire fraud, and the commission of mail and wire fraud, among other crimes, as a result primarily of making material misrepresentations to a number of life insurance companies, including Union Central, as part of an illegal STOLI scheme. The criminal action was captioned, *United States of America v. Michael Binday, James Kevin Kergil, and Mark Resnick*, No. 12-cr-152 (S.D.N.Y.) ("Binday Criminal Action").

17. On October 7, 2013, the defendants in the criminal action were found guilty by the jury.

18. In 2014, the Government in the criminal action made an application to the Southern

District of New York for restitution from the defendants for the commissions that the life insurance companies, including Union Central, had paid to the defendants for the "Scheme Policies."

19. The Union Central "Scheme Policies," as evidenced by the Government's submission to the Southern District of New York, included the Freid Policy.

20. Thus, in 2014, Union Central claimed to the Government in connection with the criminal action that the Freid Policy was one of the "Scheme Policies" procured by the defendants' STOLI fraudulent scheme, and sought to recover the commissions that it had paid to one or more of the criminal defendants for the Freid Policy by way of restitution.

21. Effective July 1, 2014, at or about the time that Union Central sought to recover restitution from the criminal defendants with respect to the Freid Policy, Union Central merged into its parent company, Ameritas.

22. Despite the fact that Union Central (and later, Ameritas) represented to the District Court for the Southern District of New York that the Freid Policy was issued as part of an illegal STOLI scheme, Union Central/Ameritas continued to demand and accept premiums for the Policy, and issue written communications to Securities Intermediary stating or indicating that the Policy was valid and in force, which was a clear admission that the criminal actions of the insurance agents did not render the Policy void. Union Central/Ameritas continued to do these things, reasonably making Securities Intermediary and its client believe that the Policy was valid and in force, for years thereafter and until Jerry Freid died and Securities Intermediary submitted a death claim to Ameritas.

23. Securities Intermediary was not involved in the criminal proceedings and had no knowledge of the prosecution or notice from Ameritas of the restitution order concerning the

Policy or any claim by Ameritas that the facts that led to prosecution would have any effect on the validity of the Policy.

24. On July 29, 2020, Jerry Freid died.

25. On or about August 17, 2020, Magna Servicing submitted a death claim to Ameritas under the Freid Policy on behalf of the policy's beneficial owner.

26. At the time of Jerry Freid's death, a total of $1,054,807.19 in premiums had been paid for the Policy.

27. Rather than pay the death claim, on February 9, 2021, Ameritas commenced an action against Securities Intermediary in the United States District Court for the District of New Jersey captioned, *Ameritas Life Insurance Corp. v. Wells Fargo Bank, National Association, as securities intermediary*, No. 3:21-cv-02136 (D.N.J.).

28. Securities Intermediary does not have sufficient minimum contacts with New Jersey for the federal court there to exercise personal jurisdiction over it.

29. Hence, Securities Intermediary has commenced this action to recover damages for Ameritas' wrongful and bad faith conduct.

30. Securities Intermediary is also moving in the New Jersey federal action to dismiss for lack of personal jurisdiction.

31. In the New Jersey action, Ameritas seeks to rescind the Policy based on facts that it was aware of no later than 2014, and to retain all of the premium paid for the Policy, including premium that it demanded and accepted after it claimed in 2014 in the Binday Criminal Action that the Freid Policy was issued as part of an illegal STOLI scheme.

32. Ameritas' past conduct of sending Securities Intermediary annual statements, illustrations, and premium and lapse notices in and after 2014 and until a death claim was

submitted to it under the Freid Policy in 2020, each of which represented to Securities Intermediary that Ameritas believed the Policy to be valid and enforceable, are past acts that were committed with the intent to induce Securities Intermediary and the securities entitlement holders to believe that Ameritas considered the Policy to be valid and enforceable, and to induce Securities Intermediary and its client to continue to pay premiums for the Policy.

33. Ameritas' past conduct in sending Securities Intermediary multiple written communications indicating that Ameritas considered the Policy to be valid and enforceable was, in each instance, a deceptive trade practice, intended to deceive Securities Intermediary and the securities entitlement holders to believe that Ameritas considered the Policy to be valid and enforceable, and to trick Securities Intermediary and the securities entitlement holders into paying premiums to keep a valid policy in force, and that the Policy would be honored by Ameritas if a death claim was later submitted to Ameritas.

34. When Ameritas sent each written communication to Securities Intermediary representing that it (Ameritas) considered the Policy to be valid and enforceable, it did so under false pretenses. Ameritas sent each of these written communications intending to induce Securities Intermediary and its client to pay more premium for the Policy to illegitimately enrich Ameritas, as Ameritas never intended to honor the Policy. For nearly a decade, based on Ameritas' insidious conduct, Ameritas has put Securities Intermediary in a "Heads I [Ameritas] Win, Tails You [Securities Intermediary] Lose" situation.

35. Alternatively, Ameritas considered the Policy valid irrespective of the criminal convictions in the Binday Criminal Action and has sued Securities Intermediary now on a false premise that the Policy is void when in fact Ameritas considered the Policy valid even in light of the actions of the agent and the order of restitution.

# FIRST CAUSE OF ACTION
## (Breach of Contract)

36. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

37. The Freid Policy, by its terms, provides that Ameritas shall make payment of the Policy's death benefit upon receipt of due proof of the insured's death; and that Ameritas shall be barred from challenging the validity of the Policy after it has been in force during the insured's lifetime for two years from its date of issuance.

38. Following the death of Jerry Freid, Securities Intermediary sent Ameritas proof of Jerry Freid's death, and otherwise provided Ameritas with all other information that it needed in order to process the death claim.

39. Ameritas has failed to pay the Policy's death benefit to Securities Intermediary.

40. Ameritas filed the New Jersey federal action on February 9, 2021, in which it sought, *inter alia,* a declaratory judgment that the Policy is void *ab initio.*

41. At the time Ameritas commenced the New Jersey action, the Policy had been in force during the insured's lifetime for more than two years from the date of its issuance

42. Ameritas therefore breached the terms of the Policy by failing to pay the Policy's death benefit and applicable interest to the Plaintiff.

43. Ameritas further breached the terms of the Policy by commencing the New Jersey action because in the New Jersey action, Ameritas challenged the validity of the Policy, even though the Policy had been in force during the insured's lifetime for more than two years from the date of Policy issuance.

44. Plaintiff has performed all its duties and obligations under the Policy.

45. As a result of the aforementioned breaches by Ameritas, Plaintiff has been damaged in a sum to be determined by the trier of fact after trial, which damages include, but are not limited to, $4 million, representing the principal amount of the Policy's death benefit, plus applicable interest, as well as the fees and costs that Plaintiff has incurred and will continue to incur as a result of Ameritas' wrongful conduct in belatedly challenging the validity of the Policy.

**SECOND CAUSE OF ACTION**
**(Bad Faith Breach of Covenant of Good Faith and Fair Dealing)**

46. Plaintiff repeats and realleges each and every allegation above as if fully set forth herein.

47. Ameritas is a domestic insurance company transacting an insurance business in the State of Nebraska.

48. Ameritas issued the Policy on September 8, 2008.

49. Plaintiff is the record owner and beneficiary of the Policy with Ameritas.

50. Following the Insured's death, Plaintiff timely submitted a death claim to Ameritas, and Plaintiff has otherwise performed all obligations under the Policy.

51. Ameritas has flagrantly and in conscious disregard of Nebraska's Unfair Insurance Claims Settlement Practices Act and common law refused to pay Plaintiff's claim for the Policy death benefit.

52. Ameritas (i) lacks any reasonable basis on which to deny Plaintiff's claim for the Policy death benefit, and (ii) knows—or has recklessly disregarded the existence—of such absence of a reasonable basis on which to deny Plaintiff's claim.

53. Ameritas' lacks any reasonable basis for denying Securities Intermediary's claim for the Policy death benefit because Ameritas has knowingly and intentionally: (a) refused to pay Securities Intermediary's death claim without conducting a reasonable investigation and/or based

on incorrect assertions of fact and in reliance on facts of which it has been aware, but has chosen to ignore, in collecting and accepting premium payments on the Policy; (b) represented that the Policy was valid and enforceable, and demanded that additional premium payments be made by Securities Intermediary to Ameritas to keep the Policy in force, all the while intending to seek to rescind the Policy after receiving a death claim and intending also to make a claim in court to keep all premiums paid for the Policy; (c) forced Securities Intermediary to file this action in order to compel Ameritas' performance under the Policy; (d) failed to adopt and implement reasonable standards applicable to the Policy for prompt investigation and payment of claims; (e) lied to Securities Intermediary regarding its claim-handling; and (f) failed to promptly pay the death claim even though Ameritas' liability is clear.

54. Securities Intermediary (and its customer on behalf of which it owns the Policy) has directly suffered a loss of money or property caused by Ameritas' unfair, unreasonable and deceptive acts or practices. Ameritas has failed and refused to pay to Securities Intermediary the $4 million death benefit promised in the Policy, and Securities Intermediary has paid $1,054.807.19 in premium to Ameritas over ten years.

55. Ameritas' unfair or deceptive acts or practices described above were intentional or knowing violations. Ameritas knew for years and knows now that it has no legitimate basis for refusing to pay the Securities Intermediary's death claim, and willfully misrepresented that it would do so.

## **JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury for all issues that may be triable by jury in this action.

## **DEMAND FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment in its favor as follows:

A. Declaring that Ameritas must pay Plaintiff the benefits owed under the Policy;

B. Awarding Plaintiff compensatory damages in an amount to be determined at trial but not less than $4 million plus interest;

C. Awarding Securities Intermediary its attorneys' fees, costs, and disbursements pursuant to Neb. Rev. Stat. § 44-359;

D. Pre- and post-judgment interest as authorized by law; and

E. Such other and further relief as the Court shall deem just and proper.

Dated: April 8, 2024

                        Wells Fargo Bank, N.A., as Securities Intermediary, Plaintiff

By: /s/ *Lee A. Pepper*
Lee A. Pepper (NY Bar # 4776928)
Julius A. Rousseau, III (*pro hac vice*)
James M. Westerlind (*pro hac vice*)
Andrew Dykens (*pro hac vice*)
ARENTFOX SCHIFF LLP
1301 Avenue of the Americas, Fl. 42
New York, New York 10019
Telephone: (212) 484-3900
lee.pepper@afslaw.com
jule.rousseau@afslaw.com
james.westerlind@afslaw.com
andrew.dykens@afslaw.com

Joel D. Heusinger, No. 18326
Audrey R. Svane, No. 25830
WOODS AITKEN LLP
301 South 13th Street, Suite 500
Lincoln, Nebraska 68508
Tel.: (402) 437-8500
Fax: (402) 437-8558
jheusinger@woodsaitken.com
asvane@woodsaitken.com

*Plaintiff's Attorneys*

# CERTIFICATE OF SERVICE

It is hereby certified that on April 8, 2024, the foregoing was electronically filed with the Clerk of the Court using the CM/ECF system, which sent notification of the filing to the following:

Christopher M. Schmidt
cschmidt@baylorevnen.com

Joseph Kelleher
jkelleher@cozen.com

Nicholas Novy
nnovy@cozen.com

Ilya Schwartzburg
ischwartzburg@cozen.com

*Attorneys for Defendant*

By: s/ *Lee A. Pepper*
Lee A. Pepper (NY Bar # 4776928)
